SONIA R. CARVALHO (SBN 162700)
City Attorney
TAMARA BOGOSIAN (SBN 201312)
Senior Assistant City Attorney
BRANDON SALVATIERRA (SBN 336758)
Deputy City Attorney
CITY OF SANTA ANA
20 Civic Center Plaza, #M-29
P.O. Box 1988
Santa Ana, California  92702
Telephone:   (714) 647-5201
Facsimile:    (714) 647-6515

*Exempt from filing fees per*
*Government Code § 6103*

Attorneys for Plaintiff,
THE PEOPLE OF THE STATE OF CALIFORNIA,
and CITY OF SANTA ANA

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, by the City Attorney for the CITY OF SANTA ANA; THE CITY OF SANTA ANA<br><br>        Plaintiffs,<br><br>    v.<br><br>KYONG SU KIM, an individual; MYONG KIM, an individual; ROYAL ROMAN MOTEL, LLC, a California Limited Liability Company; ROYAL GRAND INN, LLC, a California Limited Liability Company; NAYAN AHIR, an individual; RAVIN (RAY) AHIR, an individual; ROYAL MOTEL, INC., a California Corporation; ROYAL GRAND, INC., a California Corporation; HACIENDA ARZATE, INC., a California Corporation; HUMBERTO ARZATE-GOMEZ, an individual; MARISCO EL TAPATIO Y ANTOJITOS, an unknown business entity; MARIA MELENDEZ, an individual; and DOES 1 through 50, inclusive<br><br>        Defendants | Case No. 30-2025-01484014-CU-MC-CJC<br>Assigned for All Purposes: Judge Lindsey Martinez<br>*[Not Required to be verified pursuant to H&S Code §11572]*<br>*[Verified answer required pursuant to C.C.P. §446]*<br><br>**COMPLAINT FOR NUISANCE ABATEMENT AND INJUNCTION**<br><br>**1) DRUG DEN ABATEMENT AND INJUNCTIVE RELIEF (HEALTH & SAFETY CODE § 11570)**<br><br>**2) MAINTENANCE OF PUBLIC NUISANCE AND INJUNCTIVE RELIEF (HEALTH & SAFETY CODE § 11570; CIVIL CODE §§ 3479, 3480, 3491, 3494; CODE OF CIVIL PROCEDURE §§ 525, 526, 528, 731)**<br><br>**3) PUBLIC NUISANCE PER SE CIVIL CODE §§ 3479, 3480, 3491, 3494; CODE OF CIVIL PROCEDURE §§ 525, 526, 528, 731); (S.A.M.C. §§ 1-8, 1-12, 1-13, 17-1, 17-4 and 41-190(a))** |

COMPLAINT FOR NUISANCE ABATEMENT AND INJUNCTION

HANMI BANK, a California corporation; JOHN )
K. MANAGEMENT, INC., a California )
corporation; WON SEOK JEON, an individual; )
BANK OF HOPE, a California corporation; )
COMMERZBANK AG, a German corporation, )
)
              Real Parties in Interest. )
_____)

THE PEOPLE OF THE STATE OF CALIFORNIA ("PEOPLE") and THE CITY OF SANTA

ANA, ("CITY") (collectively, "PLAINTIFFS") are informed and believe, and thereon allege:

## I.    <u>INTRODUCTION</u>

1.   Plaintiffs, PEOPLE and CITY bring this nuisance abatement action to abate ongoing drug

activities and nuisance activities, occurring at MARISCO EL TAPATIO Y ANTOJITOS ("EL

TAPATIO", operating at 1502 E. 1st Street in Santa Ana, California (**1502**); ROYAL ROMAN

MOTEL ("ROYAL ROMAN", operating at 1504 E. 1st Street in Santa Ana, California (**1504**)

and the ROYAL GRAND INN ("ROYAL GRAND" operating at 1519 E. 1st Street in Santa Ana,

California (**1519**), (collectively, the "PROPERTIES" or the "BUSINESSES").

2.   The ROYAL ROMAN and ROYAL GRAND are short-term stay motels. EL TAPATIO

is a restaurant/bar.

3.   1502 and 1504 are located on East 1st Street in the CITY on the same side and 1519 is

located across the street. The PROPERTIES are within half a mile of the Santa Ana Zoo, a

popular destination for families and young children located less than a mile from the

PROPERTIES. There are five schools within 1.3 miles of the PROPERTIES, two of the schools

are within a half a mile. Raymond A. Villa Fundamental School shares a fence line with the

ROYAL ROMAN to the south. The East 1st corridor between Grand and Tustin has been a

source of community complaints and is known to be a high-crime area plagued with an epidemic

of narcotic related criminal activities including the sale, transportation and use of dangerous illicit

drugs, stolen vehicles, prostitution, robberies, assaults, illegal possession of firearms and

possession of stolen property.

4.   The PROPERTIES, and in particular the motels, are a hub and a haven for narcotics

activities with a reputation in the community and among law enforcement as a high narcotic area,

where drug sales and drug use run rampant and where gang members, convicted felons/criminals, probationers and parolees can be found. Despite ongoing, consistent and proactive directed enforcement by the Santa Ana Police Department (SAPD), drugs are routinely used, served, sold, stored and given away, often in plain view. The drug related and general criminal activities on the PROPERTIES have diminished the quality of life of neighboring residents and the Santa Ana community.

5.    By allowing the PROPERTIES to continue to be used as "Drug Dens", Defendants have violated the California Drug Abatement Act, Health & Safety Code ("H&S") §11570 et seq., ("Drug Abatement Law"), Civil Code §§3479, 3480, 3491 and 3494 ("Nuisance Law") and Santa Ana Municipal Code ("SAMC") §§1-8, 1-12, 1-13, 71-1, 17-4 and 41-190(a).

6.    Plaintiffs, by and through the Santa Ana City Attorney Sonia R. Carvalho, bring this action pursuant to the provisions above and pursuant to Code of Civil Procedure §§526 and 731, for injunctive relief prohibiting Defendants, and each of them, from using or maintaining the BUSINESSES and the PROPERTIES as a public nuisance. Plaintiffs seek all statutory remedies available, including, but not limited to, civil penalties, costs and other available equitable relief.

## II.    PARTIES AND VENUE

7.    The PEOPLE OF THE STATE OF CALIFORNIA is the sovereign power of the State of California. The Santa Ana City Attorney Sonia R. Carvalho is authorized by the Drug Den Abatement Act, Health and Safety Code §11571, and the Code of Civil Procedure §731 to be the complaining party in law enforcement actions to abate, enjoin, and penalize narcotics nuisances and public nuisances, in the name of the PEOPLE.

8.    The CITY OF SANTA ANA ("CITY") is a Charter City and municipal corporation, duly organized and existing under and by virtue of the Constitution and laws of the State of California and located in the County of Orange. The City has standing to bring this action pursuant to Santa Ana Municipal Code ("SAMC") §1-13(a) which provides that any violation of the City's Municipal Code is deemed a public nuisance, which may be abated by civil action.

9.    Defendants KYONG SU KIM and MYONG KIM, (collectively, the "KIMS") are the legal owners of the PROPERTIES. Because of their position, Defendant KIMS has/had the

responsibility and authority to prevent or promptly correct, the dangerous drug-related public nuisance conditions at the PROPERTIES.

10. Defendant ROYAL ROMAN MOTEL, LLC ("ROYAL ROMAN") is a California Limited Liability Company doing business in Orange County, California operating as a multi-unit commercial motel at 1504.

11. Defendants KYON SU KIM and MYONG KIM, individuals and as owners and/or managers are responsible for the operation of ROYAL ROMAN, and as officers, managers, members or agents of the ROYAL ROMAN, LLC, and as the property owners themselves, the KIMS had/have responsibility and authority to prevent or promptly correct the dangerous drug-related public nuisance conditions at the ROYAL ROMAN.

12. Defendant ROYAL GRAND INN, LLC ("ROYAL GRAND") is a California Limited Liability Company doing business in Orange, County, California operating as a multi-unit commercial motel at 1519.

13. Defendants KYON SU KIM and MYONG KIM, individuals and as owners and/or managers are responsible for the operation of ROYAL GRAND INN, LLC and as officers, managers, members or agents of the ROYAL GRAND INN, LLC, and as the property owners themselves, the KIMS had/have responsibility and authority to prevent or promptly correct the dangerous drug-related public nuisance conditions at the ROYAL GRAND.

14. Defendant ROYAL MOTEL, INC., is a California Corporation doing business in Orange County, California as a multi-unit commercial motel operating at 1504.

15. Defendant NAYAN AHIR, an individual and as Chief Executive Officer of Defendant ROYAL MOTEL, INC. is responsible for the operation of ROYAL ROMAN, INC. and as a corporate officer, manager, member or agent of Defendant ROYAL MOTEL, INC., NAYAN AHIR had/has responsibility and authority to prevent or promptly correct the dangerous drug-related public nuisance conditions at the ROYAL ROMAN.

16. Defendant RAVIN (RAY) AHIR, an individual and as Chief Financial Officer and Secretary of Defendant ROYAL MOTEL, INC. is responsible for the operation of the ROYAL ROMAN, INC., and as a corporate officer, manager, member or agent of Defendant ROYAL

1  MOTEL, INC., RAVIN AHIR had/has responsibility and authority to prevent or promptly correct

2  the dangerous drug-related public nuisance conditions at the ROYAL ROMAN.

3      17. Defendant ROYAL GRAND, INC. is a California Corporation doing business in Orange

4  County, California as a multi-unit commercial motel operating at 1519.

5      18. Defendant NAYAN AHIR, an individual and as Chief Executive Officer, is responsible

6  for the operation of ROYAL GRAND, INC. and as a corporate officer, manager, member, or

7  agent of Defendant ROYAL GRAND, INC., NAYAN AHIR, had/has responsibility and

8  authority to prevent or promptly correct the dangerous drug-related public nuisance conditions at

9  the ROYAL GRAND.

10      19. Defendant RAVIN AHIR an individual and as the Chief Financial Officer, is responsible

11  for the operation of Defendant ROYAL GRAND, INC., and as a corporate officer, manager,

12  member, or agent of Defendant ROYAL GRAND, INC., RAVIN AHIR had/has responsibility

13  and authority to prevent or promptly correct the dangerous drug-related public nuisance

14  conditions at the ROYAL GRAND.

15      20. Defendant HACIENDA ARZATE, INC., is a California Corporation doing business in

16  Orange County, California as a restaurant/bar known as MARISCO EL TAPATIO Y

17  ANTOJITOS, EL TAPATIO at 1502.

18      21. Defendant HUMBERTO ARZATE-GOMEZ, an individual and as Chief Executive

19  Officer, Secretary and Chief Financial Officer of Defendant HACIENDA-ARZATE, INC. is

20  responsible for the operation of EL TAPATIO, and, as a corporate officer, manager, member, or

21  agent of Defendant HACIENDA-ARZATE, INC., has/had responsibility and authority to prevent

22  or promptly correct the dangerous drug-related public nuisance conditions at MARISCO EL

23  TAPATIO Y ANTOJITOS, EL TAPATIO.

24      22. Defendant MARIA MELENDEZ, an individual and as owner and/or proprietor of

25  MARISCO EL TAPATIO Y ANTOJITOS, EL TAPATIO has/had responsibility and authority to

26  prevent or promptly correct the dangerous drug-related public nuisance conditions at MARISCO

27  EL TAPATIO Y ANTOJITOS, EL TAPATIO.

28  ///

23. Real Party in Interest HANMI BANK, a California corporation, has been identified as having a financial interest in the PROPERTY located at 1519 E. 1st Street, Santa Ana, California.

24. Real Party in Interest JOHN K. MANAGEMENT, INC., a California corporation, has been identified as having a financial interest in the PROPERTY located at 1519 E. 1st Street, Santa Ana, California.

25. CALIFORNIA KOREA BANK, an unknown business entity, has been identified as having a financial interest in the PROPERTY located at 1502 and 1504 E. 1st Street, Santa Ana, California. Defendant COMMERZBANK AG acquired CALIFORNIA KOREA BANK in 1999 pursuant to a Federal Reserve press release. Real Party in Interest COMMERZBANK AG, a German corporation registered to conduct business in California, has been identified as having a financial interest in PROPERTY located at 1502 and 1504 E. 1st Street, Santa Ana, California.

26. Real Party in Interest WON SEOK JEON, an individual has been identified as having a financial interest in the PROPERTY located at 1502 and 1504 E. 1st Street, Santa Ana, California;

27. WILSHIRE BANK, aka, WILSHIRE STATE BANK, a former California corporation, has been identified as having had a financial interest in the PROPERTY located at 1502 and 1504 E. 1st Street, Santa Ana, California. WILSHIRE BANK, aka WILSHIRE STATE BANK, merged into BBCN BANK, a former Delaware corporation, in 2016 pursuant to the California Secretary of State database. BBCN has been identified as having had a financial interest in PROPERTY located at 1502 and 1504 E. 1st Street, Santa Ana, California. NARA BANK CORP, INC., a former Delaware corporation merged with CENTER BANK, a former California corporation to form an entity known as BBCN BANK. In 2016, WILSHIRE BANK and BBCN BANK merged with and changed the entity name to Real Party in Interest BANK OF HOPE, a California corporation, pursuant to the California Secretary of State database. Real Party in Interest BANK OF HOPE, has been identified as having a financial interest in the PROPERTY located at 1502 and 1504 E. 1st Street, Santa Ana, California.

28. Defendants DOES 1 through 50, inclusive, are sued as fictitious names under the provisions of Code of Civil Procedure ("CCP") §474, their true names and capacities being unknown to Plaintiffs. Plaintiffs are informed and believe that each of Defendants DOES 1

through 50, is in some manner responsible for conducting, maintaining or directly or indirectly permitting the unlawful activity alleged in this Complaint. Plaintiffs will ask leave of the court to amend this Complaint and to insert in lieu of such fictitious names the true names and capacities of DOES 1 through 50 when ascertained.

29. When reference is made in the Complaint to any act or omission of one or more of the Defendants, it shall be deemed to mean the act of each and every Defendant acting individually, jointly, and severally and shall be deemed to mean Defendants' officers, agents, managers, representatives, employees, and/or DOES 1 through 50, who authorized such acts while actively engaged in the operation, management, direction or control of the affairs of Defendants, at the Defendants' direction and/or while acting within the course and scope of their duties. Reference to Defendants shall also mean each of the Defendants individually, as well as all of the Defendants, collectively.

30. Defendants and each of them are directly responsible for the activities occurring at the ROYAL ROMAN LLC, ROYAL GRAND INN, LLC, ROMAN MOTEL, INC., ROYAL GRAND, INC., MARISCO EL TAPATIO Y ANTOJITOS, EL TAPATIO (collectively, the "BUSINESSES") and PROPERTIES as set forth below, are responsible for continuing violations of the laws and public policy of the State of California and/or local codes, regulations and/or requirements applicable to Defendants' operation and activities at the BUSINESSES and PROPERTIES, and/or have permitted allowed, caused, or indirectly furthered the activities at the BUSINESSES and PROPERTIES alleged herein. Defendants' use of and activities at the BUSINESSES and PROPERTIES, or allowance of such uses and activities, are inimical to the rights and interest of the general public and constitute nuisances and/or violations of law. Defendants knew or should have known, either directly or through their subordinates, of these ongoing nuisances.

31. The omission or commission of acts and violations of law by Defendants as alleged in this Complaint occurred within the CITY OF SANTA ANA, State of California. Defendants, at all times relevant to this Complaint, have transacted business within the CITY OF SANTA ANA, are residents of Orange County, ("OC"), or both.

Case 8:25-cv-01328-JVS-DFM    Document 1-1    Filed 06/20/25    Page 8 of 31    Page ID #:12

32. Venue is proper since the BUSINESSES AND PROPERTIES where the acts and/or omissions described herein, were performed in this judicial district.

**III.    PROPERTIES**

**A.  1502 E. 1st Street, Santa Ana, California-El Tapatio Restaurant**

33. 1502 E. 1st Street, Santa Ana, California consists of one parcel of land identified as Assessor's Parcel Number 011-154-06. According to OC Recorder's Grant Deed Document 2024000172387 recorded on 7/10/2024, the owners of 1502 are Defendants KYONG SU KIM and MYONG KIM and the K&M Trust, Dated 8/26/1997.

**B.  1504 E. 1st Street, Santa Ana, California-Royal Roman Motel**

34. 1504 E. 1st Street, Santa Ana, California consists of a parcel of land identified as Assessor's Parcel Number 011-154-06. According to OC Recorder's Grant Deed Document 2024000172387 recorded on 7/10/2024, the owners are Defendants KYONG SU KIM and MYONG KIM, and the K&M Trust, Dated 8/26/1997.

**C.  1519 E. 1st Street, Santa Ana, California-Royal Grand Inn**

35. 1519 E. 1st Street, Santa Ana, California consists of a parcel of land identified as Assessor's Parcel Number 398-431-24. According to OC Recorder's Grant Deed Document 2024000172388 recorded on 7/10/2024, the owners are KYONG SU KIM and MYONG KIM, and the K&M Trust, Dated 8/26/97.

**IV.    FACTUAL ALLEGATIONS**

**A.  El Tapatio**

36. EL TAPATIO, located at 1502, believed to be owned and operated by Defendants HACIENDA ARZATE, INC., HUMBERTO ARZATE-GOMEZ and/or MARIA MELENDEZ is a known location for drug related criminal and nuisance activities and has been the source of consistent and significant problems, complaints, calls for service, criminal investigations and arrests as specified herein, and based upon evidence to be shown at trial.

37. During a three-year period, from January 1, 2022 to December 31, 2024, SAPD responded to 92 calls for service and made numerous drug related arrests and ABC (alcohol related) violations. One officer reported the Vice/Narcotics unit received a complaint from an

8

COMPLAINT FOR NUISANCE ABATEMENT AND INJUNCTION

1    anonymous citizen advising that EL TAPATIO was involved in numerous crimes including, drug

2    sales, prostitution, gambling and selling alcohol to minors.

3        38. Defendant EL TAPATIO is being used as a hub of criminal activity and to unlawfully

4    sell, store, keep, or give away controlled substances. Below are examples of some of the drug-

5    related calls, contacts, investigations and arrests at EL TAPATIO.

  a.  On 4/18/22, at approximately 11:00 hours, SAPD officers were conducting a proactive patrol when they observed multiple subjects on the sidewalk. An officer observed folded pieces of **aluminum foil on the ground** and another piece in the subject's pants pocket. Officers located a **straw** with **brown residue** and a piece of **aluminum foil** with **fentanyl** (1.83 grams) inside. Contraband was found on a female subject. Officers located nine **plastic bindles of meth** (3.12 grams). The subjects were arrested for a violation of H&S Code §§11364(a) (possession controlled substance paraphernalia), 11350(a) (possession narcotic controlled substance), and 11377(a) (possession controlled substance). (Case No. 2022-08567).'

  b.  On 8/30/23, at approximately 00:00 hours, SAPD officers were dispatched regarding a suspicious delivery package that the calling party was ordered to deliver. A male subject met the calling party outside for the delivery; the calling party found it suspicious, canceled the order, and called the police. Officers found the **package**; it contained peanut M&Ms and **tin foil** with suspected **meth** (3.3 grams). (Case No. 2023-19896).

  c.  On 2/22/24, at approximately 11:00 hours SAPD officers were conducting a proactive when they observed a male subject in the alley. The subject stated he was working as a security guard but was not wearing any identifying clothing and refused to verify his employment status. Officers searched the subject and located a rubber container of **fentanyl** (3.2 grams). At the Santa Ana Jail (SAJ), a **plastic baggie of fentanyl** (1.1 grams) was located. The male was arrested for a violation of H&S Code §11350(a) (possession narcotic controlled substance). (Case No. 2024-03980).

  d.  On 4/29/24, at approximately 10:00 hours, SAPD officers were conducting a proactive patrol when they observed a parked vehicle with the driver and passenger windows down and a female subject standing next to the passenger side. Officers located a 3-inch **glass pipe** with a **bulbous end containing residue**. The male was arrested for a violation of H&S Code §11364(a) (possession controlled substance paraphernalia). (Case No. 2024-09084).

  e.  On 12/13/24, Santa Ana officers were conducting a proactive patrol when they followed a vehicle as it yielded into the driveway of El Tapatio (1502 E. 1st St., Santa Ana). Officers observed a **meth pipe** on the driver. The male was arrested for several charges including a violation of Health & Safety Code §11364(a) (possession controlled substance paraphernalia). (Case No. 2024-27057).

**B. Royal Roman Motel**

23        39. Defendant ROYAL ROMAN, located at 1504, believed to be owned and operated by

24    Defendants the KIMS, NAYAN AHIR, and/or RAVIN AHIR is a known location for drug

25    related criminal and nuisance activities and has been the source of consistent and significant

26    problems, complaints, calls for service, criminal investigations and arrests as specified herein,

27    and based upon evidence to be shown at trial. During a three-year period, from January 1, 2022 to

28    December 31, 2024, SAPD responded to 765 calls for service and made 124 arrests, 62 of which

were drug related, including but not limited to: drug possession, drug sales, drug distribution, disorderly conduct: under the influence of drugs, possession of drug paraphernalia, possession of controlled substance without prescription, drug possession with prior convictions, conspiracy and transportation of drugs. An arrestee told Santa Ana officers he knows the ROYAL ROMAN is a motel known for narcotics use and sales.

40. Defendant ROYAL ROMAN is being used as a hub of criminal activity and to unlawfully sell, store, keep, or give away controlled substances. Below are examples of some of the drug-related calls, contacts, investigations and arrests at ROYAL ROMAN.

    a.  On 10/13/22, at approximately 16:00 hours, SAPD officers were conducting proactive patrol when they noticed suspicious activity. Officers detained an adult male. During the pat-down search, officers located a **folded-up dollar bill with a substance**; the male admitted it was **meth**. Inside the bill, officers located a bindle of **fentanyl** (1.71 grams). The subject was arrested for a violation of H&S Code §11350(a) (possession narcotic controlled substance) and was charged by the Orange County District Attorney's Office ("OCDA"). (Case No. 2022-23016).

    b.  On 11/5/22, at approximately 00:00 hours, SAPD officers were conducting proactive patrol when they observed two adult males standing near a vehicle; one who had an **alcoholic drink**. The male was detained and searched. Officers located multiple **clear baggies** with various substances. The male identified the narcotics as **fentanyl** (29.3 grams), **fentanyl residue** (10.2 grams), **meth** (39.2 grams), and 37 "M30s" (30-milligram **oxycodone hydrochloride pills**). The male was arrested for a violation of H&S Code §§11351 (possession/purchase for sale narcotics/controlled substances) and 11378 (possession controlled substances for sale) and was charged by the OCDA. (Case No. 2022-24948).

    c.  On 4/12/23, at approximately 16:00 hours, SAPD officers were conducting proactive patrol when they observed **two subjects slumped inside a vehicle**. Officers observed various **narcotic paraphernalia** inside the vehicle, including empty plastic **baggies** of **crystalline dust**, burnt pieces of **aluminum foil**, and various **pipes**. The subjects were detained. The driver admitted to **smoking fentanyl**. Officers located a cylindrical canister of a **white chalk-like powdery substance** (5 grams) and large aluminum foil containing a **light brown burnt residue** in the vehicle. The male was arrested for a violation of H&S Code §§11350(a) (possession controlled substances) and 11364(a) (possession controlled substance paraphernalia) and was charged by the OCDA. (Case No. 2023-08328).

    d.  On 5/02/23, at approximately 09:00 hours, SAPD officers were conducting proactive patrol when they observed two subjects who appeared to be engaging in a **hand to hand narcotics transaction**. An officer recognized one subject (known and documented gang member). The subjects saw the officers and fled; officers detained a male. The male subject consented to a search and officers located the following items: **$1,050.61**, a small baggie 75 M30s (30-mg **oxycodone hydrochloride pills**), **$1,231** inside his wallet, and 1 **cellphone**. Officers conducted a search of the male's motel room (**Room 218**) and located the following items: 2 black **digital scales**, **meth** (0.4 grams), several **plastic baggies**, and 2 **cellphones**. While at the SAJ, a correctional officer searched the subject and located **meth** (65.5 grams) and **fentanyl** (10 grams) in a bag attached to his boxers. The male was arrested for a violation of H&S Code §§11351 (possession/purchase for sale narcotic/controlled substance), 11352(a) (transport/sell narcotic/controlled substance), 11377(a) (possession controlled substance), and 4573.5 (bring alcohol/drugs/into prison/jail/) and was charged by the OCDA. (Case No. 2023-09970).

e.  On 6/25/23, at approximately 09:00 hours, SAPD officers were conducting proactive patrol when they observed what appeared to be a **hand to hand narcotics transaction** between two males. Officers attempted to subdue and detain one of the males who resisted; other officers arrived to assist. Officers located a **metal pipe**, 5 individual **foil bindles** with an unknown **white substance**, a glass pipe with white **residue**, 8 **cell phones**; substance thought to be **fentanyl** (2 grams with packaging). At SAJ, the subject admitted he was at the motel with a friend who **resided** in the bottom three **rooms**. He admitted using **meth** and **marijuana**. He was arrested for a violation of H&S Code §§11351 (possession/purchase for sale narcotic/controlled substance) and 11364(a) (possession controlled substance paraphernalia) and was charged by the OCDA. (Case No. 2023-14162).

f.  On 9/25/23, at approximately 14:00 hours, SAPD officers conducted a proactive patrol when they observed a male subject avoid another officer. Officers detained the subject and in plain view observed a rubber container of presumed **fentanyl** (11.74 grams) in the subject's jacket pocket. The male was arrested for a violation of H&S Code §11350(a) (possession narcotic controlled substance). (Case No. 2023-22224).

g.  On 1/4/24, at approximately 11:00 hours, SAPD officers were conducting a proactive when they observed a male who was repeatedly knocking on Room 123; the subject was holding a **cell phone**, plastic **bindle of meth** (7 grams), and a phone charger. Officers located a **meth pipe** and 4 **Xanax** pills in his pocket. The male was arrested for a violation of H&S Code §§11377(a) (possession controlled substance), 11364(a) (possession controlled substance paraphernalia), and 11375(b)(2) (possession controlled substance without prescription) and was charged by the OCDA. (Case No. 2024-00243).

h.  On 2/9/24, at approximately 15:00 hours, SAPD officers were conducting a proactive patrol when they observed two subjects using narcotics. One subject had a **foil** with a **melted substance** recognized as **fentanyl**, a **lighter**, and a **straw**; The subject attempted to dispose of the foil. The other subject was **displaying symptoms of fentanyl intoxication** (lethargic, constricted pupils, slurred/slowed speech). Both subjects were arrested for a violation of H&S Code §11350(a) (possession narcotic controlled substance) and were charged by the OCDA. (Case No. 2024-03005).

i.  On 2/13/24, at approximately 21:00 hours, an SAPD detective authored a search warrant for Room 224 related to an ongoing narcotic sales investigation. At approximately 23:00 hours, SAPD officers executed the warrant. A male subject attempted to flee but was detained. Two other subjects were also detained in the room. Inside the room, officers located the following items: multiple empty **plastic baggies** in a purse, black magnetic locked container of **meth** (48.5 grams), key to black magnetic locked container, a large shard of meth (15.4) inside a metal skull, a black **digital scale** on the floor, two **cell phones**, and $10. At the SAJ, one of the subjects **admitted all of meth belonged to him**. The subjects were arrested for a violation of H&S Code §11378 (possession controlled substance for sale) and Penal Code ("PC") §148(a)(1) (obstruct/etc. peace officer - no assault) and were charged by the OCDA. (Case No. 2024-03316).

j.  On 2/22/24, at approximately 08:00 hours, a SAPD detective authored a search warrant for Room 224 related to an ongoing narcotic sales investigation. At approximately 17:00 hours, SAPD detectives were conducting surveillance of **Room 224** when they observed two male subjects exit. One male possessed a cell phone. The detectives continued their surveillance of room 224 and observed a female subject approach and exit with another female; detectives located three **cell phones** and **$241** in a purse. Detectives located the following inside Room 224: multiple empty small **plastic baggies** and **meth** (96.1 grams) inside a green metal skull. The subjects were arrested for a violation of H&S Code §11378 (possession controlled substance for sale) and were charged by the OCDA. (Case No. 2024-04020).

COMPLAINT FOR NUISANCE ABATEMENT AND INJUNCTION

k. On 4/6/24, at approximately 11:00 hours, SAPD officers were conducting a proactive patrol when they observed a male subject seated on the stairs. The subject was holding a piece of **foil** and attempted to conceal it. The **foil had burn marks and brown residue**. The male was arrested for a violation of H&S Code §11364(a) (possession controlled substance paraphernalia) and was charged by the OCDA. (Case No. 2024-07348).

l. On 5/25/24, at approximately 11:00 hours, SAPD officers were conducting a proactive patrol when they observed a male **subject attempting to ingest narcotics by melting a substance on a piece of foil** with a **lighter** and ingesting the fumes with a **straw** in his mouth. The foil to had **burnt black residue** and **melted fentanyl** (0.5 grams). The male was arrested for a violation of H&S Code §11350(a) (possession narcotic controlled substance) and was charged by the OCDA. (Case No. 2024-11222).

m. On 8/6/24, at approximately 04:00 hours, SAPD officers served a warrant for **Room 224**. Two subjects were contacted inside the motel room; there was **proof of an extended inhabitation period**. The following items were located inside the room: a black zipper bag, two **ziploc bags** (one with 130 grams of **meth** and the other had 1 gram of residue of **suspected meth**), a **glass bong** with **burn marks** and **white residue**, a functioning **digital scale** with **residue**, several unused gallon **ziploc bags**, a receipt for an auto repair, and metal **measuring spoons** with **white residue**. Officers also located **currency** as follows: $430 (varying denominations) and $373 (varying denominations). Two **cell phones** were seized. The male **confessed to selling meth**. The female's cell phone revealed evidence of **meth sales**. The subjects were arrested for a violation of H&S Code §§11378 (possession substance for sale) and PC §182(a)(1) (conspiracy: commit crime) and were charged by the OCDA. (Case No. 2024-16868).

n. On 12/23/24, at approximately 16:00 hours, SAPD officers were conducting a proactive patrol when they observed a parked vehicle with the engine running. A male subject walked to the vehicle and began speaking to the occupants. Officers searched one of the subjects and located **aluminum foil** with **burn marks**; large amounts of **US currency** in the following denominations: fifty-five $100 bills, eight $50 bills, seventy-five $20 bills, nine $10 bills, forty-six $5 bills, forty-eight $1 bills (totaling $7,868). Officers searched the vehicle and located the following items: sunglass case of **fentanyl** and a **glass pipe** with a bulbous end and **burnt residue**. In the trunk, officers located a backpack with the following items: **plastic baggy of fentanyl**, plastic cylinder **container of fentanyl**, sunglasses bag containing **six bindles of fentanyl**, cylinder **container of fentanyl**, operational **digital scale with residue**, and container with four foil **bindles of fentanyl** and one plastic baggy of **meth** (4 grams); the **fentanyl** totaled to 439 grams. Officers also located two **phones** and a **scale**. The males were arrested for a violation of H&S Code §§11351 (possession/purchase for sale narcotic/controlled substance) and 11378 (possession controlled substance for sale). (Case No. 2024-27700).

o. On 1/7/25, at approximately 20:00 hours, SAPD officers were conducting a proactive patrol at the ROYAL GRAND (1519) when they observed a male subject sitting on the staircase. Officers located a **motel room key** for Room 202 at the ROYAL ROMAN. When a subject exited, officers observed a sandwich bag of **meth** (19.5 grams). Inside the subject's purse, officers located a bag of assumed **fentanyl** (7.5 grams). The female was arrested for a violation of H&S Code §11350(a) (possession narcotic controlled substance) and 11377(a) (possession controlled substance) and was charged by the OCDA. (Case No. 2025-00450).

p. On 1/8/25 at approximately 18:00 hours, Santa Ana officers were conducting surveillance when they noticed a lot of **foot traffic** in the parking lot. Their attention was drawn to Room 236, due to several individuals seen knocking on the door, quickly **entering the room and exiting** within a few minutes. Officers believed there was **narcotics activity related to the motel room**. An officer observed a male subject enter the motel property and walk up to the second story walkway towards Room 236. The male entered the motel room and exited within a few minutes. Officers believed the subject was potentially conducting a **narcotics transaction** in the motel room. As the male exited the motel property, officers stopped the subject; he was in possession of approximately 3

12

grams of suspected **meth** and 0.5 grams of suspected **fentanyl**. The subject stated he was coming from the ROYAL ROMAN prior to being stopped. He was issued a citation and released. Officers observed another male subject enter room #236 and then exit the room and leave the property. Officers conducted an enforcement stop and located a folded piece of **aluminum foil** which contained approximately 1 **gram of a white chalky substance** on him believed to be **fentanyl**. The male subject was booked at the SAJ for a violation of H&S Code §11350(a). Officers observed a male open the motel room door and stand in the door way. Due to the **activity seen coming from Room 236**, an officer authored a **search warrant for the Room 236**. On 1/8/2025, officers served the search warrant and three subjects were contacted inside the motel room. **US Currency** and a black **cellphone** was located on one subject as follows: three **$20 bills** and twelve **$5 bills**. The subject had three outstanding **felony warrants** for his arrest The following items were located during the search: -(1) safe box located; (1) Open box of unused **plastic baggies**.-(1) Baggie of a **white crystalline substance** believed to be **meth**; (1) Baggie containing four white bar shaped **pills** believed it was **alprazolam**; (1) Baggie containing four blue round **"M30" pills** believed it was **pressed fentanyl pills**; (2) $2 bills. Inside the safe, officers located;(3) Baggies of a **white crystalline substance** believed to be **meth**; (3) Baggies of white **chalky substance** believed to be **fentanyl**; (14) folded pieced of **aluminum foil** containing the same **white chalky substance** believed to be **fentanyl**; (2) Bottles which contained a white bar shaped **pills** believed to be **alprazolam**; (1) Baggie containing seven pink round **"M30" pills** believed to be **fentanyl**; (1) Baggie containing seven blue round "M30" **pills** believed to be **fentanyl**; (4) **Digital scales**. The same folded aluminum foil containing the suspected **fentanyl** located inside the safe box was the same folded foil. Officers seized during their arrest. The suspected **meth** weighed approximately 4.5 gross grams. The three baggies suspected **meth** weighed approximately 30 gross grams, 29 gross grams and 15 gross grams for a total weight of approximately 74 grams. The three baggies of suspected **fentanyl** weighed approximately 12.5 gross grams, 21 gross grams and 5 gross grams. Each of the 14 folding pieced of **aluminum foil** contained approximately .5 grams for a total weight of the suspected **fentanyl** approximately 59.5 grams. One bottle of **alprazolam** contained approximately **77 pills** and the other contained approximately **51 pills**. in the room. The male denied possessing and/or selling the narcotics. One subject was booked at the SAJ for a violation of H&S Code §§ 11378 and 11351. On 1/8/25 at approximately 21:00 hours, Santa Ana officers were conducting surveillance regarding a search warrant. An officer was advised a male subject leaving the motel may have been related to the search warrant. The male was walking on the sidewalk of 1st Street. An officer recognized the male as a probationer who he had contacted one day prior (1/7/25) In the male's pocket, officers located an oval shaped item wrapped in an elastic material similar to a nitrile glove. When an officer cut through the black layer, he observed a **white crystalline substance** inside and advised it was **meth** (31.5 grams). The male was cited for a violation of H&S Code §11377(a). (Case No. 2025-00532).

q.    On 1/8/25, at approximately 20:00 hours, SAPD officers were conducting a proactive patrol when they observed a male subject who was on parole. Officers watched the subject going in and out of Room 208 and (possibly 204). During a probation check, officers located a baggy of **fentanyl** (0.5 grams) and a glass pipe. Officers searched the subject's bag and located a baggy of **meth** (5 grams), a container with **loose fentanyl** (2 grams), a bag of **fentanyl** (1 gram), and 72 **M30 pills** (30-milligram **oxycodone hydrochloride** pills). Officers also seized two **cell phones**. The subject was arrested for a violation of H&S Code §§11395(b)(1) (narcotics possession w/ two prior convictions) and 11364(a) (possession controlled substance paraphernalia); a violation of PC §148.9(b) (false id to arresting officers) and was charged by the OCDA. (Case No. 2025-00577).

r.    On 2/4/25, at approximately 19:00 hours SAPD officers were conducting. Over the course of an hour, officers observed heavy **foot traffic in Room 107** and activities that appeared to be **illegal narcotics sales**. Officers observed a male subject exit the room. A records check revealed the subject was on probation. Officers discovered **meth** (15.6 grams and 15.2 grams), **$357 in various denominations** and a ROYAL ROMAN **room key** (Room 107). A motel employee confirmed the **subject was staying at the motel for several weeks**. Officers searched the room connected to the motel key and located the following: **drug paraphernalia** in plain view; **body armor**; two **nitrous oxide tanks** which contained **nitrous**; graffiti inside the room (substantial amount related

_____

COMPLAINT FOR NUISANCE ABATEMENT AND INJUNCTION

to Lopers criminal street gang "Varrio Lopers") **meth** (114 grams, 434 grams and 3.6 grams), fentanyl 22 & 25 grams), **ecstasy pills** (56 individually packaged pills), unidentified **white oval pills** (84 pills), Blue **M30 pills** (50 pills), **Alprazolam** pills from Mexico (90 pills); suspected **fentanyl powder** (1 gram); **blue oval pills** (13 pills); "**crack**" (7.7 grams), **loose marijuana** in a duffel bag (4 pounds); **digital scale**; 87 **cartridges of 9mm ammunition**. Officers observed a **shrine with 8 twisted plastic bindles** which appeared to contain **powdered cocaine** (.6 grams, 1.7 grams, 1 gram, .8 grams, .8 grams, 1 gram, 1 gram, .8 grams), two additional **cartridges of 9mm ammunition** and **$168 in various denominations**. They had Lopers **criminal street gang writing** on them with black marker. One of the subjects that was arrested had a necklace with two medallions. One **medallion** was of **Santa Muerta** and the other was **Santa Malverde**. **Malverde** is often **associated with drug traffickers and considered a "narco-saint."** The object arrestee was a convicted felon with a length arrest history. Both subjects were arrested for violations of H&S Code §§11378 (possession of a controlled substance), 11379(a) (transport a controlled substance), 11351 (possess/purchase for sale a narcotic/controlled substance), PC §§ 31360(b)(1) (possession of body armor) 30305(a)(1) (prohibited person owning ammunition) and 496d(a) (possession of a stolen vehicle). Charges are pending with the OCDA. (Case No. 2025-02435).

s.    On 3/2/25 Santa Ana officers conducted a patrol check of the motel. While driving into the driveway of the motel, officers observed a male subject riding an electric bike who was known to be on **parole** and a **gang member**. Once the subject noticed officers, he dropped his bike as well as a black **bindle** and made erratic movements towards the staircase. This subject has, on prior contacts, ran into the closest room to evade police. Officers gave instructions to stop and the subject complied. The subject stated he was aware he had an **outstanding warrant.** Officers seized **heroin** (87 grams), a **glass pipe** with burnt end residue, **$1**, and two **cell phones.** The subject was arrested for violation of H&S §11350(a) (possess narcotic/controlled substance), 11364(a) (possess controlled substance paraphernalia, 11395(b)(1) (narcotics possession w/two prior convictions) and Penal Code §978.5 (bench warrant/failure to appear). (Case No. 2025-04276).

t.    On 3/11/25 Santa Ana officers drove through the parking lot of the motel and noticed security cameras above room 137 that did not belong to the motel. An officer observed a female subject and a male subject known to be on probation take part in what appeared to be a drug transaction in Room 137. Officers knocked on the door in an attempted probation compliance. After no answer for several minutes officers attempted to manually breach the door which was reinforced from the inside. A male subject eventually opened the door and was detained. Adjoining room 135 was unlocked, and officers discovered a false door inside room 135. The female subject was found inside room 135. Officers discovered two room keys for 135 and 137, methamphetamine (274 grams - equal to 2,740 doses, enough to keep an individual under the influence for 365 days straight), pressed M30 pills (74 grams), fentanyl (17.5 grams), Xanax (90 pills), 4 cell phones, two scales, empty sandwich bags, $1, $479.50 cash and $490 cash. The room had no blankets or pillows but contained clothing and shoes, and appeared to be a "stash house." Text messages were found on the subject's cell phone who was on probation, indicating drug sales in rooms 135 and 137. Subjects were arrested for violations of H&S §11378 (possess controlled substance for sale), 11351 (possess/purchase for sale narcotic/controlled substance), Penal Code §978.5 (bench warrant/failure to appear). (Case No. 2025-04978).

u.    On 3/21/25 a Santa Ana officer was patrolling the parking lot of the motel when he noticed a male subject on the side of the lot attempting to **ingest narcotics**. The subject was trying to melt a white chalk like substance inside of foil with a lighter. Upon noticing the officer, the subject put the foil down. A records check of the subject revealed he had multiple prior convictions for possession of hard drugs. The subject was arrested for violation of H&S §11359(b)(1) (narcotics possession w/two prior convictions) and 11350(a) (possess narcotic controlled substance). The officer seized .5 grams of **Fentanyl**. (Case No. 2025-05704).

///

///

_____
COMPLAINT FOR NUISANCE ABATEMENT AND INJUNCTION

**C. Royal Grand Inn**

41. Defendant ROYAL GRAND, located at 1519, believed to be owned and operated by Defendants the KIMS, NAYAN AHIR, and/or RAVIN AHIR, is a known location for narcotics related criminal and nuisance activities and has been the source of consistent and significant problems, complaints, calls for service, criminal investigations and arrests as specified herein, and based upon evidence to be shown at trial. During a three-year period, from January 1, 2022 to December 31, 2024, SAPD responded to 584 calls for service and made 142 arrests, 70 of which were drug-related, including but not limited to: drug possession, drug sales, drug distribution, disorderly conduct: under the influence of drugs, possession of drug paraphernalia, drug possession with prior convictions, felon/addict possession firearm, warrant, parole violations, conspiracy and transportation of drugs. One officer reported he was told on many occasions by narcotics users that several rooms at the ROYAL GRAND are involved in narcotics sales.

42. Defendant ROYAL GRAND is being used as a hub of criminal activity and to unlawfully sell, store, keep, or give away controlled substances. Below are examples of some of the narcotics-related calls, contacts, investigations and arrests.

    a. On 4/22/22, at approximately 21:00 hours, SAPD officers were conducting a proactive patrol when they observed several subjects loitering near the staircase. Officers saw a red **straw** with **black residue** and a piece of **tin foil** with **burnt residue**. Officers observed a **plastic baggy** of fentanyl (0.6 grams) in plain view. The subject also had a dirk and dagger. The male was arrested for a violation of H&S Code §11350(a) (possession narcotic controlled substance) and was charged by the OCDA. (Case No. 2022-08963).

    b. On 9/23/22, at approximately 19:00 hours, SAPD officers were conducting a proactive patrol when they observed a parked vehicle in the lot with two male subjects who did not have a room. Officers searched them and located a **meth pipe**. During a search of the vehicle, an officer located a **semi-automatic handgun** (in plain view) and a plastic container with **13 rounds** (.40 caliber ammunition) One of the subjects admitted to inhaling **meth**; he had checked out of his earlier. The males were arrested for a violation of PC §§29800(a)(1) (felon/addict/possession/etc. firearm) and H&S §11364(a) (possession controlled substance paraphernalia) and were charged by the District Attorney's Office. (Case No. 2022-21380).

    c. On 1/27/23, at approximately 22:00 hours, SAPD detectives were conducting a proactive patrol when they were advised the vehicle of a subject on **probation** was located. Officers conducted a probation check of the subject's room (216) and located 4 **plastic bindles of meth** (117.42 grams), a **working scale**, and a **large amount of US currency** (five $100 bills, three $50 bills, thirty-four $20 bills, seven $10 bills, and eight $5 bills). The subject's wallet contained the following **denominations**: three $5 bills, and fifteen $1 bills. The male was arrested for a violation of H&S Code §11378 (possession controlled substance for sale) and was charged by the OCDA. (Case No. 2023-02201).

d.  On 2/7/23, at approximately 13:00 hours, Santa Ana officers were conducting a proactive patrol when they observed a male subject walking towards the inn with a **room key in his hand**. The subject told officers he paid for a room. Officers conducted a **probation check** of **Room 111** and located four **illegal gambling machines**, a plastic baggy of **meth**, a zipper bag with two **bindles of meth** (collectively 2 grams of meth). At the SAJ, they searched the subject and located a plastic bindle of **meth** (12 grams). The male was arrested for a violation of H&S Code §11377(a) (possession controlled substance) and was charged by the OCDA. (Case No. 2023-03126).

e.  On 4/18/23, at approximately 08:00 hours, SAPD officers were conducting a proactive patrol when they observed two male subjects sitting on the ground surrounded by personal property. Officers located three pieces of aluminum **foil** with **burned white residue**, a **glass tube**, and a small aluminum bindle of **fentanyl** (0.4 grams). The males were arrested for a violation of Health & Safety Code §§11350(a) (possession narcotic controlled substance) and 11364(a) (possession controlled substance paraphernalia). They were charged by the OCDA. (Case No. 2023-08811).

f.  On 6/1/23, at approximately 23:00 hours, a SAPD detective served a search warrant for **Room 103**. Five subjects were detained. Officers located two small plastic baggies of **meth** (1.5 grams) and two small plastic baggies of **fentanyl** (2.7 grams). On another subject, officers located **fentanyl** (2.3 grams) and two **M30 blue pills** (**fentanyl pills**). Officers searched the room and located the following: presumed **fentanyl** (9.5 grams), multiple small **plastic baggies**, two **digital scales**, mail addressed to one of the subjects, and a receipt addressed to the other subject. The males were arrested for a violation of H&S Code §§11350(a) (possession narcotic controlled substance) and 11377(a) (possession controlled substance) and were charged by the OCDA. (Case No. 2023-12411).

g.  On 7/20/23, at approximately 16:00 hours, a search warrant was authored for Rooms 226 and 121 for suspected narcotics activity. Officers detained a female on her way back to the room. An officer located four **M30 pills** (**counterfeit oxycodone containing fentanyl**) in her purse. Officers served the warrant for Room 121 and located a stolen motorcycle helmet and jacket. Officers served the warrant for room 226 and located a **bindle of meth** (7.3 grams) on a female subject. A search of the room yielded the following: a plastic container of **20 small plastic baggies**, a **digital scale** with **white residue**, presumed **meth** inside a folded piece of paper (1.0 gram), presumed **heroin** wrapped in plastic (2.5 grams), presumed **meth** in clear plastic (2.5 grams), a notebook with **"Minnie St." graffiti** on several pages, 3 **replica handguns**, and 1 **replica rifle**. The subjects were arrested for a violation of H&S Code §11377(a) (possession controlled substance) and 11350(a) (possession narcotic controlled substance) and were charged by the OCDA. (Case No. 2023-16318).

h.  On 8/11/23, at approximately 12:00 hours, SAPD officers were conducting a proactive patrol when they observed a male subject exiting a room. Officers recognized the subject who appeared to throw something back into the room. Officers searched the room and located a plastic **baggie** of **meth** (12 grams) and a plastic wrapping of **meth** (2 grams). The subject admitted the 12-gram package was his. The male was arrested for a violation of H&S Code §11377(a) (possession controlled substance) and PC §3056 (parole violation - felony) and was charged by the OCDA. (Case No. 2023-18184).

i.  On 9/21/23, at approximately 10:00 hours, SAPD officers were conducting a proactive patrol when they observed a male subject standing at the driver's door of a parked vehicle. The subject took off running when he spotted the officers; an officer gave chase, and the subject entered Room 110. Officers **searched the room** and found the following: 2 **baggies** and one piece of **tinfoil of a white powder substance** (15 grams), a **pay-owe sheet** with six **names and numbers**, one operating **digital scale with white residue**, one **digital scale**, and 2 **smartphones**. The officers located the following **US currency denominations**: eight $20 bills, four $10 bills, twenty-five $5 bills, twenty-eight $1 bills as well as three $10 bills and eleven $2 bills; totaling $405. Officers also located **Mexican Pesos** in the following **denominations**: one $500, one $200, one $100, and one $1; totaling $801 Pesos. Both subjects admitted one of them was **selling narcotics**. They were

16

arrested for a violation of H&S Code §11351 (possession/purchase for sale narcotic/controlled substance) and were charged by the OCDA. (Case No. 2023-21874).

j. On 1/12/24, at approximately 14:00 hours, a SAPD detective was conducting undercover surveillance. The detective observed a male enter **Room 119** and leave three minutes later. He asked a marked unit to detain the subject; the subject admitted to purchasing **fentanyl** (2 grams) for $100. The detective observed three different males enter room 119 consecutively; he authored a search warrant. At approximately 17:00 hours, Santa Ana officers served the search warrant and observed a male and female exit **Room 119** and leave the motel in a vehicle. Officers pulled the vehicle over and upon searching it located $664, a plastic baggie of **meth** (8.2 grams), and two room keys (Rooms 119 and 124). Officers searched **Room 119** and located the following: a **cellphone**, multiple empty **baggies**, a **scale**, suspected **meth** (9.6 grams $200, and a container of suspected **fentanyl** (0.8 grams). Officers searched **Room 124** and located a plastic baggie of suspected **meth** (1.09 grams). At the SAJ, the female was searched and a **plastic baggie of M30 fentanyl pills** (26.65 grams) was located. The female was arrested for a violation of H&S Code §§11351 (possession/purchase or sale narcotic/controlled substance) and 11378 (possession controlled substance for sale). (Case No 2024-00895).

k. On 1/12/24, at approximately 15:00 hours, SAPD officers served a search warrant for **Room 119**. As they approached Room 119, a male opened the door to Room 118 and yelled profanities at the officers before slamming the door. The subject opened the door again, made an inappropriate proposition and explicit hand gesture, and continued yelling. The subject returned to the room and officers heard the sound of metal on metal they believed to be a handgun being chambered. When the male exited the room, he was searched and officers located an **unsheathed knife** and could **smell alcohol** on him. At the SAJ, a plastic bindle of **meth** (3.78 grams) was found on him. The male was arrested for a violation of PC §4573.6(a) (possession controlled substance paraphernalia in prison/jail). (Case No. 2024-00900).

l. On 1/14/24, at approximately 14:00 hours, SAPD detectives were conducting a proactive patrol when they observed a male subject exiting a room that was under **investigation for narcotic sales**. Detectives made contact with him and he admitted to possessing narcotics. Detectives located **fentanyl** in aluminum foil (0.33 grams). The male was arrested for a violation of H&S Code §11350(a) (possession narcotic controlled substance) and was charged by the OCDA. (Case No. 2024-01027).

m. On 3/25/24, at approximately 1:00 hours, SAPD officers were conducting a proactive patrol when they observed a male subject leaning into the passenger side of a parked vehicle. When the subject spotted officers, he attempted to flee and hide. Officers searched the vehicle and located the following: a cellophane bag of **fentanyl** (5 grams), five **$20 bills**, and a **cellphone**. The subject provided the password to the cell phone; several messages were indicative of **narcotic sales**. The male was arrested for a violation of H&S Code §§11352(a) (transport/sell narcotic/controlled substance) and 11351 (possession/purchase for sale narcotic/controlled substance) and was charged by the OCDA. (Case No. 2024-06443).

n. On 10/18/24, at approximately 11:00 hours, SAPD officers assisted probation officers with a probation check. A probation officer had five subjects detained in Room 106. He searched the room and located a bag of suspected narcotics: small Ziploc **baggie of 80 M30 fentanyl pills** (10.2 grams), four plastic baggies of **meth** (86.8 grams), two **plastic baggies** of **fentanyl** (27.3 grams), and one baggie of marijuana (2.1 grams). Officers also located **US currency** in the following **denominations**: eleven $100 bills, three $20 bills, one $10 bill, two $5 bills, six $2 bills, and thirteen $1 bills (totaling $1,205); an additional $12 was located in a pouch. Two **cellphones** were also located. The subjects were arrested for a violation of H&S Code §11378 (possession controlled substance for sale) and 11351 (possession/purchase for sale narcotic/controlled substance). (Case No. 2024-22644).

17

o. On 1/15/25, at approximately 14:00 hours, SAPD officers responded to a call to assist OC Probation. Officers were informed that probation officers located **ammunition and a magazine** in **Room 222** and a subject's vehicle. An officer was directed to a box containing **.380 ammunition** and a **magazine**. An officer located a bag of **meth** (4.7 grams) and a glass **bulbous pipe** with **burnt residue**. Officers located a bag of **US currency** ($3,670). A parole officer handed an officer a can with different **rounds of ammunition** and two **rifle rounds** in the glove compartment. On top of the vehicle, officers located a bag with **.38 ammunition**. The subjects were arrested for a violation in H&S Code §§11377(a) (possession controlled substance) and 11364(a) (possession controlled substance paraphernalia). Charges are pending with the OCDA. (Case No. 2025-01025).

p. At 1/16/25, at approximately 18:00 hours, SAPD officers were conducting a proactive patrol when they observed a vehicle parked in front of **Room 105**. A male subject stepped out of **Room 105**, noticed police, and quickly re-entered the room. On 11/19/24 an officer had contacted the same subject and a female subject in the parking lot. They were found to be in possession of **meth** (660.50 grams) and were staying in Room 105. On 1/14/25, officers observed the same male in the doorway of **Room 105** with another male; officers later contacted the other male and found him to be in possession of **meth** (6.3 grams). This investigation is on-going. The OCDA did not file charges. (Case No. 2025-01092).

q. On 1/21/25, at approximately 3:00 hours, SAPD officers were conducting a proactive patrol when they observed a male subject exit the motel on a scooter. Officers located **Room key 112**. The subject said he was residing in either **Room 104 or 105**. He admitted to having approximately 14 grams of **meth** in the room. Officers searched **Room 105** and located the following: a **scale, packaging material**, a **glass paraphernalia pipe**, a plastic **baggie of 16 white pills** (resembling **Xanax**), a plastic baggie of **meth** (17.8 grams), **.22 ammunition**. A **cellphone** and **$1,215** was located on him. The male was arrested for a violation of H&S Code §§11378(a) (possession controlled substance for sale), 11375(b)(1) (possession for sale designated controlled substance), and 11395(b)(1) (narcotics possession w/ two prior convictions) and was charged by the OCDA. (Case No. 2025-01387).

r. On 4/3/25 Santa Ana officers conducted a compliance probation check on a subject who was staying in **room 203** with 3 other male subjects. In the room officers discovered a **meth pipe**, **$1**, and **methamphetamine** (2.5 grams). Three subjects were arrested for violation of probation, H&S 11395(b)(1) (narcotics possession w/two prior convictions), and violation of Penal Code 978.5 (bench warrant/failure to appear). (Case No. 2025-06722).

s. On 4/4/25 Santa Ana officers were conducting a patrol check, when they saw a male subject standing near the front office of the motel drop a **methamphetamine pipe**. While detained, the subject told the officer he had something "white" in his pocket. The officer removed a **foil bindle** containing **methamphetamine** (.5 grams) from his pocket, and **fentanyl** (.3 grams) from his sock. The subject was arrested for a violation of H&S 11350(a) (11350(a) (possess narcotic controlled substance), 11377(a) (possess controlled substance) and 11364(a) (possess controlled substance paraphernalia). SAPD Case No. 2025-06763

33. Online reviews of the ROYAL ROMAN and ROYAL GRAND describe the BUSINESSES and PROPERTIES are being used as drug dens:

**a.    Royal Roman**

"Lots of homeless and drug activity….police frequent here"
"…homeless people and drug sales. Not safe for Nobody"
"….people taking drugs, very unsafe…"
"…drugs everywhere. The place was raided by Santa Ana police…"

COMPLAINT FOR NUISANCE ABATEMENT AND INJUNCTION

"This is the place to pick up whatever you may need if you're appetite consists of hard narcotics in lethal amounts!..."

An anonymous individual posted the following comment below an article entitled "The SAPD made two drug busts at the Royal Roman Motel[1]":

"*These motels on 1st need to be declared a public nuisance and shut down. They are injurious the health and safety of both the community, and to the poor souls who are forced to live there. A little research into public business records suggest the owners of the Royal Roman (and the equally ghetto Royal Grand across the street) live in multi-million mansions in the hills. What a disgrace. Slum lords in the truest sense of the word*."

**b.    Royal Grand**

"The people who stay here do a ton of drugs openly…staff and owners don't care..."
"…Better hotels/rooms same price. You won't be exposed to drug use/paraphernalia all around…"

**FIRST CAUSE OF ACTION**
**DRUG DEN ABATEMENT ACT**
**(H&S Code §§ 11570-11587)**
**(By People of the State of California**
**Against All Defendants and DOES 1-50)**

34. The PEOPLE incorporates and reallege by reference as though fully set forth  in this Paragraph, all allegations of the Complaint.

35. The PROPERTIES, have been, and continue to be, used for the purposes of unlawfully selling, serving, storing, keeping, manufacturing, and/or giving away controlled substances, precursor, or analog, as specified in H&S Code §§11000-11651 (Uniform Controlled Substances Act), namely cocaine, methamphetamine, prescription drugs, fentanyl, marijuana, illicit pills, drug paraphernalia, and/or other illegal narcotics, in violation of H&S Code §11570 *et seq*. Such conduct constitutes a nuisance as a matter of law pursuant to H&S Code §11570.

34. Defendants, who, at all relevant times, have owned and/or controlled the BUSINESSES and/or PROPERTIES, have been on notice of the nuisances, and yet, have failed to take reasonable steps to prevent or abate it. As a result of this failure, and of the Defendants' mismanagement of the BUSINESSES and PROPERTIES, Defendants have caused or contributed to an extremely serious threat to the health, safety and welfare of persons at or around the BUSINESSES and the PROPERTIES, and persons in the surrounding community.

---

[1] https://newsantaana.com/the-sapd-made-two-drug-busts-at-the-royal-roman-motel/

35. Defendants, their employees and agents, and DOES 1 through 50, are responsible for conducting, maintaining and/or directly or indirectly permitting the nuisance as alleged herein.

36. The PEOPLE have no plain, speedy, or adequate remedy at law because damages are insufficient to protect the public from the present injury and harm caused the conduct described herein. Unless Defendants are enjoined and restrained by order of this Court, they will continue to cause, contribute to, maintain, permit (directly or indirectly), or allow, the nuisance described herein that are taking place at the PROPERTIES, to the great and irreparable damage of the public and in violation of California law.

37. Pursuant to H&S Code §11583, the PEOPLE request the court allow a Temporary Restraining Order or Injunction to abate and prevent the continuance or recurrence of the nuisance at the PROPERTIES.

38. Pursuant to H&S Code §11581, the People request the Court order the PROPERTIES closed for one year and impose statutory civil penalties of $25,000 against each Defendant to prevent them from continuing to maintain nuisances at the PROPERTIES.

39. Unless the nuisance described in this Complaint is abated, the PEOPLE and the residents of the CITY will suffer irreparable injury and damage, because the nuisances will continue to be dangerous to the health, safety or welfare of those who live and work near the PROPERTIES and the general public.

**SECOND CAUSE OF ACTION**
**PUBLIC NUISANCE**
**[Civ. Code § 3479 *et seq.*]**
**(By Plaintiff People of the State of California**
**Against All Defendants and DOES 1-50)**

40. The PEOPLE incorporate and reallege by reference, as though fully set forth in this paragraph, all allegations of the Complaint.

41. Code of Civil Procedure §731 authorizes a city attorney to bring an action in the name of the People of the State of California to enjoin or abate a public nuisance.

42. From at least 2022 to the present, the PROPERTIES have been owned, operated, managed, used, and/or directly or indirectly permitted to be used in such a manner as to constitute a public nuisance under Civil Code §§3479 and 3480. The public nuisance described herein is

injurious to health, indecent or offensive to the senses, and/or an obstruction to the free use of property, and it substantially and unreasonably interferes with the comfortable enjoyment of life or property by persons living and/or otherwise conducting their business at or near the PROPERTIES.

43. Conditions which render the property a public nuisance and/or public nuisance per se include, but are not limited to: H&S Code §11364 (possession of drug paraphernalia); H&S Code §11377 (possession of methamphetamine); H&S Code §11378 (possession of a controlled substance for sale); H&S Code §11379 (transporting controlled substances for sale); H&S Code §11350 (possession of a controlled substance); H&S Code §11351 (possession/purchase for sale narcotics/controlled substances); H&S Code §11352 (transportation/sale narcotics/controlled substances); H&S Code §11375(b)(2) (possession controlled substance without prescription; H&S Code §11395(b)(1) (narcotics possession w/ two prior convictions); PC §647(f) (disorderly conduct: under influence of drug).

44. Defendants, who, at all relevant times, have owned and/or controlled the BUSINESSES and/or PROPERTIES, have been on notice of the nuisances, and yet, have failed to take reasonable steps to prevent or abate it. As a result of this failure, and of the Defendants' mismanagement of the BUSINESSES and PROPERTIES, Defendants have caused or contributed to an extremely serious threat to the health, safety and welfare of persons at or around the BUSINESSES and the PROPERTIES, and persons in the surrounding community.

34. Defendants, their employees and agents, and DOES 1 through 50, are responsible for conducting, maintaining and/or directly or indirectly permitting the nuisance as alleged herein.

35. The PEOPLE have no adequate remedy at law in that damages are insufficient to protect the public from the present danger and harm caused by the conditions described herein.

36. Unless the nuisance described herein is abated, the surrounding community and neighborhood, the PEOPLE, and the residents of the CITY will suffer irreparable injury and damage, as the conditions described will continue to be injurious to the enjoyment and free use of the PROPERTIES by those who live and work nearby as well as the general public.

///

### THIRD CAUSE OF ACTION
**PUBLIC NUISANCE PER SE**
**[Civ. Code § 3479 *et seq.*]**
**[S.A.M.C. §§ 1-8, 1-12, 1-13, 17-1, 17-4, 41-190(a)]**
**(By Plaintiff City of Santa Ana**
**Against All Defendants and DOES 1-50)**

37. The CITY incorporates and realleges by reference, as though fully set forth in this paragraph, all the allegations in the Complaint.

38. Santa Ana Municipal Code ("SAMC") §1-13(a) provides that any violation of the City's Municipal Code is deemed a public nuisance, which may be abated by civil action.

39. SAMC § 1-8 provides that violations of the SAMC can be addressed by way of a civil action.

40. SAMC §1-12 provides as follows: "Whenever in this Code any act or omission is made unlawful, the permitting, suffering, or concealing such act or omission shall each constitute a separate offense."

41. SAMC §1-13 provides as follows, "In addition to the penalties provided in this Code, any condition caused or permitted to exist in violation of any of the provisions of this Code, uniform or adopted codes, or any provision of state or federal law that may be enforced by the city, shall be deemed a public nuisance and may be, by this city, summarily abated as such by filing criminal or civil actions, and each day such condition continues shall be regarded as a new and separate offense."

42. SAMC § 17-1 defines "public nuisance" as any condition which is a "nuisance" and a "public nuisance" as defined in Civil Code §§3479 and 3480 of the State of California or which is specifically declared to constitute a nuisance by any statute of the State of California or by any ordinance of the CITY.

43. SAMC §17-4 defines "abate" and "abatement" as an action to repair, replace, remove, destroy, terminate, or otherwise remedy the condition or activity in question by such means and in such manner as is necessary in the interests of the health, safety or welfare of the public.

44. SAMC § 41-190(a) provides: "No building shall be erected, reconstructed or structurally altered except in conformance to the provisions contained herein; nor shall any building or land

22

be used for any purpose other than that which is permitted in the district or modified district in which such building or land is located."

45. For several years now, and as ongoing, the PROPERTIES and BUSINESSES have been owned, operated, managed, and used, and/or directly or indirectly permitted to be used in such a manner as to constitute a public nuisance under the SAMC. The public nuisance, as described herein, is injurious to the health, indecent or offensive to the senses, and/or an obstruction to the free use of the PROPERTIES, and substantially and unreasonably interferes with the comfortable enjoyment of life or property by persons living or otherwise conducting business at or near the PROPERTIES and BUSINESSES.

46. Conditions which render the property a public nuisance and/or public nuisance per se include, but are not limited to: H&S Code §11364 (possession of drug paraphernalia); H&S Code §11377 (possession of methamphetamine); H&S Code §11378 (possession of a controlled substance for sale); H&S Code §11379 (transporting controlled substances for sale); H&S Code §11350 (possession of a controlled substance); H&S Code §11351 (possession/purchase for sale narcotics/controlled substances); H&S Code §11352 (transportation/sale narcotics/controlled substances); H&S Code §11375(b)(2) (possession controlled substance without prescription; H&S Code §11395(b)(1) (narcotics possession w/ two prior convictions); PC §647(f) (disorderly conduct: under influence of drug).

45. Defendants, who, at all relevant times, have owned and/or controlled the BUSINESSES and/or PROPERTIES, have been on notice of the nuisances, and yet, have failed to take reasonable steps to prevent or abate it. As a result of this failure, and of the Defendants' mismanagement of the BUSINESSES and PROPERTIES, Defendants have caused or contributed to an extremely serious threat to the health, safety and welfare of persons at or around the BUSINESSES and the PROPERTIES, and persons in the surrounding community. Defendants mismanagement of the PROPERTIES and BUSINESSES have caused or contributed to a serious threat to the health, safety and welfare of those present at or around the PROPERTIES, as well as those in the surrounding community.

///

45. Defendants, their employees and agents, and DOES 1 through 50, are responsible for conducting, maintaining and/or directly or indirectly permitting the nuisance as alleged herein.

46. The CITY has no adequate remedy at law in that damages are insufficient to protect the public from the present harm caused by the conditions described herein.

47. Unless the nuisance described herein is abated, the surrounding community and neighborhood, the CITY and its residents will suffer irreparable injury and damage, in that the nuisance conditions will continue to be injurious to the enjoyment and free use of the PROPERTIES and BUSINESSES by those who live and work nearby and the general public.

48. Pursuant to SAMC §§1-8, 1-12, 1-13, 1-17, 17-1, 17-4 and 41-190(a), the CITY requests the Court issue an injunction to abate and prevent the continuance and recurrence of the nuisance at the PROPERTIES, and order Defendants to reimburse the CITY, as restitution, its full investigative costs and abatement costs.

## PRAYER

WHEREFORE, Plaintiffs pray that this Court order, adjudge, and decree as follows:

**As to the First Cause of Action:**

1. That Defendants, and the PROPERTIES, be declared in violation of H&S Code §11570 *et seq.*

2. That the PROPERTIES, together with the fixtures and movable property therein and thereon, be found to constitute a public nuisance and be permanently abated in accordance with H&S Code §11581.

3. That the Court grant a Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, and order of abatement in accordance with H&S Code §11570 et seq., enjoining and restraining Defendants and their agents, officers, employees, and anyone acting on their behalf, from unlawfully selling, serving, storing, keeping, manufacturing, or giving away controlled substances on the PROPERTIES, and/or directly or indirectly maintaining or permitting such nuisance activity.

4. That as part of the Judgment, an Order of Abatement be issued and the PROPERTIES, and each of them, be closed for a period of one year, not to be used for any purpose, and be under

the control and custody of this Court for that year. Alternatively, if the Court deems such closure to be unduly harmful to the community, that Defendants pay damages equal to the fair market rental value of the PROPERTIES for one year to the CITY or County in whose jurisdiction the nuisance is located, in accordance with H&S Code §11581(c)(1).

5.   That the Court order physical and managerial improvements to the PROPERTIES in accordance with H&S Code §11573.5, and such orders as are otherwise appropriate to remedy the nuisance on the PROPERTIES and enhance the abatement process, including but not limited to, implementation of the following:

     a.   A third-party qualified professional property management company manage the Defendants operations and take steps necessary to abate the nuisance;

     b.   The installation of web-based video monitoring system accessible by SAPD along with retention of video for a reasonable period of time;

     c.   Installation of a controlled gate; (ROYAL ROMAN and ROYAL GRAND only);

     d.   Installation of a locked, video-monitored, electronically controlled gate to the PROPERTIES at the point of its driveways (ROYAL ROMAN and ROYAL GRAND only);

     e.   Improved lighting in all common areas;

     f.   Licensed, uniformed security guard(s) at all times;

     g.   Rules prohibiting the sale of drugs and disruptive activities, trespassing, loitering, code of conduct and parking;

     h.   Registration of guests and vehicles (ROYAL ROMAN and ROYAL GRAND only);

     i.   Improved screening of tenants and prohibiting known criminals and those convicted of offenses on the PROPERTIES from accessing or renting rooms (ROYAL ROMAN and ROYAL GRAND only);

     j.   Payment of relocation expenses to tenants displaced from the PROPERTIES as a result of the abatement process. (ROYAL ROMAN and ROYAL GRAND only);

     k.   Permit Santa Ana Code Enforcement officers to inspect the BUSINESSES and

PROPERTIES without an inspection warrant for three (3) years following a nuisance determination;

l.   Prohibiting cash payment, hourly rental of rooms(s) and rental of rooms for a portion of a day. (ROYAL ROMAN and ROYAL GRAND only);

m.  Defendants' principals or other representatives reside at the PROPERTIES until the nuisance is abated. (ROYAL ROMAN and ROYAL GRAND only); and

n.   Any such orders as are appropriate to remedy the nuisance and enhance the abatement process.

6.   That Defendants each be assessed a civil penalty in an amount not to exceed twenty-five thousand dollars ($25,000).

7.   That all fixtures and moveable property used in conducting, maintaining, aiding, or abetting the nuisance at the BUSINESSES and PROPERTIES be removed by SAPD and sold in the legal manner provided for the sale of chattels at execution, and in accordance therewith, all fixtures and property shall be inventoried and a list prepared and filed with this Court.

8.   That there shall be excluded from the SAPD sale, property not owned by Defendants, their agents, officers, employees, servants, trustees, officers, or anyone acting on their behalf subject to proof of title.

9.   That the proceeds from the SAPD sale be deposited with this Court to cover the payment of fees and costs of the sale. The fees and costs are those that will be necessary to remove fixtures and moveable property, to close the BUSINESSES and PROPERTIES and keep them closed.

10. That if the proceeds of the SAPD sale would not fully cover all approved costs, fees, and allowances necessary to remove fixtures and movable property, to close the BUSINESSES and PROPERTIES and keep them closed, the Court shall instead order that the BUSINESSES and PROPERTIES be sold, with the proceeds of the executed sale to be applied first to the above-described costs, fees, and allowances, with any excess funds to be paid to the owners of the BUSINESSES AND PROPERTIES. Ownership shall be established to the satisfaction of the Court.

///

11. That Defendants, their agents, officers, employees, servants, trustees, officers, heirs, assignees, and anyone associated with them, or acting on their behalf, be perpetually enjoined from transferring, conveying, or encumbering any portion of the BUSINESSES and PROPERTIES for consideration or otherwise, without first obtaining the Court's prior approval.

12. That Defendants be ordered to immediately notify any transferees, assignees, purchasers, commercial lessees, or other successors-in-interest to the subject BUSINESSES and PROPERTIES of the existence and application of any temporary restraining order, preliminary injunction, or permanent injunction, prior to entering into any agreement to sell, lease, or transfer all or any portion of the BUSINESSES and PROPERTIES that are the subject of this action, for consideration or otherwise.

13. That Defendants be ordered to immediately give a complete, legible copy of any temporary restraining order, preliminary injunction, and permanent injunction to all prospective transferees, assignees, purchasers, commercial lessees, or other successors-in-interest to the BUSINESSES and PROPERTIES;

14. That Defendants be ordered to immediate request and procure signatures from all prospective transferees, purchasers, lessees, or other successors-in-interest to the subject BUSINESSES and PROPERTIES, which acknowledges his/her respective receipt of a complete, legible copy of any temporary restraining order, preliminary injunction, or permanent injunction, and deliver a copy of such acknowledgment to the City Attorney's Office, c/o Sr. Asst. City Attorney, Tamara Bogosian or her designee.

15. That Plaintiffs recover the costs of this action, including law enforcement investigative costs and any fees, including attorney's fees, authorized by law [pursuant to Civil Code §3496(c)].

**As to the Second Cause of Action:**

1. That the PROPERTIES, together with the fixtures and moveable property therein and thereon, be declared a public nuisance and be permanently abated as such in accordance with Civil Code §3491.

///

2.   That the Defendants, their agents, officers, employees, and anyone acting on their behalf, and their heirs and assignees, be preliminarily and perpetually enjoined from operating, conducting, using, occupying, or in any way permitting the use of the BUSINESSES and/or the PROPERTIES thereon as a public nuisance. Such orders should include, but not be limited to implementation of the following:

    a.   A third-party qualified professional property management company manage the Defendants operations and take steps necessary to abate the nuisance;

    b.   Installation of a controlled gate; (ROYAL ROMAN and ROYAL GRAND only);

    c.   The installation of web-based video monitoring system accessible by SAPD along with retention of video for a reasonable period of time;

    d.   Installation of a locked, video-monitored, electronically controlled gate to the PROPERTIES at the point of its driveways (ROYAL ROMAN and ROYAL GRAND only);

    e.   Improved lighting in all common areas;

    f.   Licensed, uniformed security guard(s) at all times;

    g.   Rules prohibiting the sale of drugs and disruptive activities, trespassing, loitering, code of conduct and parking;

    h.   Registration of guests and vehicles (ROYAL ROMAN and ROYAL GRAND only);

    i.   Improved screening of tenants and prohibiting known criminals and those convicted of offenses on the PROPERTIES from accessing or renting rooms (ROYAL ROMAN and ROYAL GRAND only);

    j.   Payment of relocation expenses to tenants displaced from the PROPERTIES as a result of the abatement process (ROYAL ROMAN and ROYAL GRAND only);

    k.   Permit Santa Ana Code Enforcement officers to inspect the BUSINESSES and PROPERTIES without an inspection warrant for three years following a nuisance determination;

    l.   Prohibiting cash payment, hourly rental of rooms(s) and rental of rooms for a portion of a day. (ROYAL ROMAN and ROYAL GRAND only);

m.  Defendants' principals or other representatives reside at the PROPERTIES until the nuisance is abated. (ROYAL ROMAN and ROYAL GRAND only); and

n.  Any such orders as are appropriate to remedy the nuisance and enhance the abatement process.

3.  Such costs as the Plaintiffs may incur in abating the nuisance at the BUSINESSES and PROPERTIES and such other costs as the Court shall deem just and proper.

4.  That the Plaintiff be granted such other and further relief as the Court deems just and proper, including if necessary, closure of the PROPERTIES and BUSINESSES.

**As to the Third Cause of Action:**

1.  That the PROPERTIES, together with the fixtures and moveable property therein and thereon, be declared a public nuisance and be permanently abated and enjoined pursuant to the SAMC.

2.  That the Court issue orders including but not limited to, implementation of the following:

a.  A third-party qualified professional property management company manage the Defendants operations and take steps necessary to abate the nuisance;

b.  Installation of a controlled gate; (ROYAL ROMAN and ROYAL GRAND only);

c.  The installation of web-based video monitoring system accessible by SAPD along with retention of video for a reasonable period of time; Installation of a controlled gate; (ROYAL ROMAN and ROYAL GRAND only);

d.  Installation of a locked, video-monitored, electronically controlled gate to the PROPERTIES at the point of its driveways (ROYAL ROMAN and ROYAL GRAND only);

e.  Improved lighting in all common areas;

f.  Licensed, uniformed security guard(s) at all times;

g.  Rules prohibiting the sale of drugs and disruptive activities, trespassing, loitering, code of conduct and parking rules;

h.  Registration of guests and vehicles (ROYAL ROMAN and ROYAL GRAND only);

///

29

i.  Improved screening of tenants and prohibiting known criminals and those convicted of offenses on the PROPERTIES from accessing or renting rooms (ROYAL ROMAN and ROYAL GRAND only);

j.  Payment of relocation expenses to tenants displaced from the PROPERTIES as a result of the abatement process (ROYAL ROMAN and ROYAL GRAND only);

k.  Permit Santa Ana Code Enforcement officers to inspect the BUSINESSES and PROPERTIES without an inspection warrant for three years following a nuisance determination;

l.  Prohibiting cash payment, hourly rental of rooms(s) and rental of rooms for a portion of a day. (ROYAL ROMAN and ROYAL GRAND only);

m.  Defendants' principals or other representatives reside at the PROPERTIES until the nuisance is abated. (ROYAL ROMAN and ROYAL GRAND only); and

n.  Any such orders as are appropriate to remedy the nuisance and enhance the abatement process.

3.  Investigative costs the City may incur in investigating and abating the nuisance.

4.  That the Plaintiff be granted such other and further relief as the Court deems just and proper, including if necessary, closure of the BUSINESSES and PROPERTIES.

**As to All Causes of Action:**

1.  That Plaintiffs recover the amounts of the filing fees, fees for service of process or notices that would have been paid, but for Government Code §6103.5, designating it as such. The fees may, at the Court's discretion include the amount of the fees for certifying and preparing transcripts.

///

///

///

///

///

///

_____
COMPLAINT FOR NUISANCE ABATEMENT AND INJUNCTION

2.   That Plaintiffs be granted such other and further relief as the Court deems just and proper, including, if necessary, the appointment of a receiver to carry out the Court's judgment.

DATED: May 20, 2025

SONIA R. CARVALHO
City Attorney
City of Santa Ana

By: _____
TAMARA BOGOSIAN,
Senior Assistant City Attorney
BRANDON SALVATIERRA
Deputy City Attorney
Attorneys for Plaintiffs
People of the State of California
City of Santa Ana

31

COMPLAINT FOR NUISANCE ABATEMENT AND INJUNCTION